UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>TAMMY HODGIN,<br><br>Defendant. | 4:15-CR-40110-02-KES<br><br>ORDER DENYING MOTION<br>FOR COMPASSIONATE RELEASE |

Defendant, Tammy Hodgin, moves for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i). Docket 117. Plaintiff, the United States of America, opposes the motion. Docket 126. For the following reasons, the court denies defendant's motion for compassionate release.

## BACKGROUND

On September 6, 2016, Hodgin pleaded guilty to conspiracy to distribute a controlled substance in violation of 21 U.S.C. §§ 841(a)(1) and 846. Dockets 95, 103. On November 28, 2016, the court sentenced Hodgin to 130 months in custody and five years of supervised release. Docket 111; Docket 112 at 2-3.

Hodgin is incarcerated at FCI Phoenix, a medium security facility with an adjacent minimum-security camp, in Phoenix, Arizona. Fed. Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited Mar. 9, 2021). The total population at FCI Phoenix is currently 1,033 persons. https://www.bop.gov/locations/institutions/phx/ (last visited Mar. 9, 2021). As of March 9, 2021, there is one active COVID-19 case among FCI Phoenix's inmates. *See BOP: COVID-19 Update*, https://www.bop.gov/coronavirus/ (last visited Mar. 9,

2021). There has been one inmate death, and 480 inmates and 55 staff have recovered from COVID-19 at FCI Phoenix as of March 9, 2021. *Id.* Assuming a static population, this means that 47% of inmates at FCI Phoenix have contracted COVID-19, and all but one have recovered.

Hodgin alleges she suffers from congestive heart failure, type 2 diabetes, arthritis, high blood pressure, being overweight, and high cholesterol. Docket 117 at 4. As of January 6, 2021, Hodgin weighs 268 pounds and is 64 inches tall. Docket 119 at 12, 87. Based on her weight and height, her body mass index (BMI) is 46, which qualifies her as obese. *See Adult BMI Calculator*, Ctrs. for Disease Control & Prevention, https://www.cdc.gov/healthyweight/ assessing/bmi/adult_bmi/english_bmi_calculator/bmi_calculator.html (last visited Mar. 9, 2021). Hodgin is 46 years old. Docket 119 at 608.

On April 13, 2020, Hodgin completed an Inmate Request to Staff form, requesting she be considered for compassionate release due to diabetes and congestive heart failure in light of COVID-19, and to care for her family members. Docket 121 at 2. On or about April 22, 2020, the warden denied Hodgin's request concluding her conditions were not debilitating and suggesting she request home confinement from her case manager. *Id.* Hodgin did so, and her case manager denied her home confinement request because she had not yet served 50% of her sentence. *Id.* at 3. On June 9, 2020, Hodgin requested the warden reconsider her compassionate release request, which was denied based on the Bureau of Prison's efforts to protect inmates from COVID-19. *Id.* at 1, 10. On January 13, 2021, Hodgin filed a pro se motion with the

court for relief under the First Step Act. Docket 117. Hodgin's counsel subsequently filed a supplement to her pro se motion. Docket 122.

## DISCUSSION

Because sentences are final judgments, a court ordinarily "may not modify a term of imprisonment once it has been imposed[.]" 18 U.S.C. § 3582(c). In 2018, Congress passed the First Step Act (FSA). Pub. L. No. 115-391, 132 Stat. 5194 (2018). In pertinent part, the FSA amends 18 U.S.C. § 3582(c)(1)(A) to permit incarcerated defendants in certain circumstances to file motions with the court seeking compassionate release. Compassionate release provides a narrow path for defendants with "extraordinary and compelling reasons" to leave prison early. 18 U.S.C. § 3582(c)(1)(A)(i). Such a reduction in sentence must take into consideration the 18 U.S.C. § 3553(a) sentencing factors and be consistent with applicable policy statements issued by the Sentencing Commission. 18 U.S.C. § 3582(c)(1)(A).

The Sentencing Commission's policy statement, which was adopted before the FSA was passed, requires both "extraordinary and compelling reasons" to warrant a sentence reduction and the defendant not pose a danger to the safety of others. USSG § 1B1.13(1)-(2) (Nov. 2018). The burden to establish that a sentence reduction is warranted under 18 U.S.C. § 3582(c) rests with the defendant. *See United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016).

Hodgin argues that the global COVID-19 crisis along with her serious health conditions satisfy the "extraordinary and compelling reasons" standard

under 18 U.S.C. § 3582(c)(1)(A)(i). *See* Docket 117 at 4-5; Docket 122 at 9-15; Docket 127 at 3-5. Hodgin also requests the court consider her mother's failing health and family circumstances as additional reasons for compassionate release. Docket 117 at 5.

I.  **Administrative Exhaustion**

Previously, only the BOP Director had the authority to bring a compassionate release motion on a defendant's behalf. With the enactment of the FSA, however, Congress now permits courts to grant compassionate release on motions filed by defendants "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]" 18 U.S.C. § 3582(c)(1)(A). The court concludes Hodgin has satisfied the administrative exhaustion requirement and reviews the matter on the merits.

II. **Extraordinary and Compelling Reasons**

Though section 3582(c)(1)(A)(i) provides for compassionate release upon a showing of "extraordinary and compelling reasons," Congress did not define what constitutes "extraordinary and compelling." *See* 28 U.S.C. § 994(t). The Sentencing Commission was directed to describe what should be considered extraordinary and compelling reasons and fashion "the criteria to be applied and a list of specific examples." *Id.* As directed, the Sentencing Commission did so by limiting "extraordinary and compelling reasons" to four categories. USSG

4

§ 1B1.13, cmt. n.1(A)-(C). The four categories pertain to a defendant's (1) terminal illness, (2) debilitating physical or mental health condition, (3) advanced age and deteriorating health in combination with the amount of time served, and (4) compelling family circumstances. *Id.* A fifth catch-all category also exists for an "extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)" as determined by the Director of the Bureau of Prisons. USSG § 1B1.13, cmt. n.1(D).

The Sentencing Commission's guidance in § 1B1.13 was provided prior to the passage of the FSA amending section 3582(c)(1)(A) and has not been updated because the commission lacks a quorum. *See United States v. Beck*, 425 F. Supp. 3d 573, 579 n.7 (M.D.N.C. 2019) ("As the Sentencing Commission lacks a quorum to amend the U.S. Sentencing Guidelines, it seems unlikely there will be a policy statement applicable to [compassionate-release] motions brought by defendants in the near future."). As a result, a number of district courts, including this one, have questioned whether the previous policy statement still applies. *See United States v. Rodd*, 2019 WL 5623973, at *3 (D. Minn. Oct. 31, 2019); *United States v. Brown*, 2020 WL 2091802, at *5-6 (S.D. Iowa Apr. 29, 2020); *United States v. Poole*, 4:15-CR-40099-KES, 2020 WL 4673329, at *2 (D.S.D. Aug. 12, 2020).

Because the FSA changed the way a compassionate release motion may be brought, "several district courts have concluded that the discretion vested in the BOP Director under the catch-all provision now belongs coextensively to

5

federal judges." *United States v. Condon,* 458 F. Supp. 3d 1114, 1118 (D.N.D. 2020) (citing *United States v. Fox,* 2019 WL 3046086, at *3 (D. Me. July 11, 2019); *Beck,* 425 F. Supp. 3d at 578-80; *United States v. Cantu,* 423 F. Supp. 3d 345, 352-53 (S.D. Tex. 2019)); *see also United States v. Rivernider,* 2020 WL 597393, at *3 (D. Conn. Feb. 7, 2020). This uncertainty has not yet been addressed by the Eighth Circuit. *See United States v. Loggins,* 966 F.3d 891, 892 (8th Cir. 2020) ("We need not decide whether the statute supersedes the policy statement in this respect . . . ."); *United States v. Rodd,* 966 F.3d 740, 747 (8th Cir. 2020) ("We need not determine whether the district court erred in adhering to the policy statements in § 1B1.13.").

This court has assumed the policy statements still apply to compassionate release motions brought under the FSA and utilizes USSG § 1B1.13, comment notes 1(A)-(D) to guide its analysis. *See, e.g., United States v. Dressen,* 4:17-CR-40047-01-KES, 2020 WL 5642313, at *3 (D.S.D. Sept. 22, 2020) *summarily aff'd* (8th Cir. Oct. 9, 2020); *United States v. Adame,* 4:18-CR-40117-05-KES, 2020 WL 7212096, at *3 (D.S.D. Dec. 7, 2020); *United States v. Nyuon,* 4:12-CR-40017-01-KES, 2020 WL 7029873, at *3 (D.S.D. Nov. 30, 2020).

Hodgin contends the ongoing COVID-19 pandemic in combination with her health conditions and the conditions of her confinement satisfy the "extraordinary and compelling reasons" standard under 18 U.S.C. § 3582(c)(1)(A)(i). *See* Docket 117 at 4-5; Docket 122 at 9-15; Docket 127 at 3-5. Hodgin further requests the court consider her mother's health conditions

6

and need for a caregiver as additional reasons. Docket 117 at 4-5. The court examines Hodgin's request for compassionate release under the medical conditions category, USSG § 1B1.13 comment note 1(A), the family circumstances category, USSG § 1B1.13 comment note 1(C), and the catch-all provision, USSG § 1B1.13 comment note 1(D).

Assuming the court's discretion to consider compassionate release is at least as broad as the outdated policy statement of the Sentencing Commission, the court concludes Hodgin's medical conditions, though serious, do not rise to the level of "extraordinary and compelling" circumstances justifying a reduction in sentence. Nor do her family circumstances fall within parameters of comment note 1(C) justifying compassionate release.

### A.     Medical Conditions Category, Note 1(A)

COVID-19 appears to pose a particular risk for individuals with certain existing health conditions. The Centers for Disease Control and Prevention (CDC) has identified the following conditions as ones that *do* pose an increased risk of severe illness from COVID-19: cancer, chronic kidney disease, chronic obstructive pulmonary disease, obesity (a BMI of 30 or higher), heart conditions, type 2 diabetes and several others. *People with Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (updated Feb. 22, 2021). The CDC advises that other medical conditions *might* pose an increased risk of severe illness from COVID-19, including, moderate to severe asthma, cystic fibrosis, hypertension or high blood pressure, liver disease, overweight, type 1 diabetes,

7

and several others. *Id.*

The court has reviewed the medical records submitted in this case. Hodgin's current medical conditions include type 2 diabetes, chronic kidney disease-stage 1, hypertension, hyperlipidemia, arthritis, and several others. Docket 119 at 20-21. Though not diagnosed with obesity, her BMI of 46 qualifies Hodgin as obese. She has a history of heart failure that is noted as resolved. *Id.* at 21. Hodgin's prescription regimen to treat these conditions includes atorvastatin, duloxetine HCI, furosemide, glipizide, lisinopril, metformin, meloxicam, and potassium chloride. *Id.* at 30-31.

Several of Hodgin's conditions are identified by the CDC as ones that *do* increase the risk of severe illness from COVID-19, including obesity, type 2 diabetes, and chronic kidney disease. Hodgin also has hypertension, a condition the CDC recognizes *might* increase her risk from COVID-19. Hodgin's cumulative medical situation presents a more compelling case than most for consideration of compassionate release in the age of COVID-19. However, Hodgin has already contracted COVID-19, and her course of the illness was not severe.

On or about November 25, 2020, Hodgin was placed in quarantine after possible exposure to COVID-19. Docket 119 at 547. A COVID-19 test was performed and returned as positive on December 3, 2020. *Id.* at 594-95. Her vital signs were monitored daily following the diagnosis. *Id.* 565-67. Hodgin reported cold and flu-like symptoms including sore throat, congestion, headache, body ache, fatigue, and shortness of breath on December 3 and 4,

2020. *Id.* 537, 544. Those symptoms improved and mostly resolved over the next several days. *See id.* at 570-72. She did not develop fever. *Id.* at 567. On December 10, 2020, a chest X-ray was taken. *Id.* at 597. Hodgin's lungs were clear and without pleural effusion. *Id.* The impression was no acute cardiopulmonary disease and the results were stable as compared to a prior chest exam on September 5, 2019. *Id.*

Hodgin argues that her prior course of COVID-19 does not weigh against compassionate release because she is still at risk of her medical conditions worsening, relapse, reinfection, and developing side effects from the virus. Docket 122 at 15-17. Much is still unknown about COVID-19. The court cannot speculate as to Hodgin's risk of relapse or reinfection by the virus, but notes the CDC and other medical resources indicate the risk is rare. According to the CDC, "[c]ases of reinfection with COVID-19 have been reported, but remain rare." https://www.cdc.gov/coronavirus/2019-ncov/your-health/reinfection.html (updated Oct. 27, 2020) (last visited Mar. 9, 2021). There is a growing consensus that "people who have had evidence of a prior infection with SARS-CoV-2, the virus that causes COVID-19, appear to have some degree of protection against being reinfected with the virus." *See SARS-CoV-2 Antibodies Can Protect from Reinfection, NCI Study Suggests*, Nat'l Cancer Inst., https://www.cancer.gov/news-events/cancer-current-blog/2020/coronavirus-antibodies-protect-against-future-infection (dated Dec. 21, 2020) (last visited Mar. 9, 2021).

Hodgin's chronic medical conditions appear to be stable and

9

appropriately managed at FCI Phoenix. There is no evidence currently suggesting the medical staff is failing to care for those conditions. *See United States v. Ayon-Nunez*, 2020 WL 704785, at *3 (E.D. Cal. Feb. 12, 2020) ("Chronic conditions that can be managed in prison are not a sufficient basis for compassionate release.") (internal quotation omitted). Nor is the court willing to speculate regarding potential side effects Hodgins may or may not experience from COVID-19 in the future when evaluating whether compassionate release is currently warranted.

  The court believes the facility is engaged in appropriate efforts to protect inmates against the spread of COVID-19, and the facility would act to treat any inmate who does contract COVID-19. The fact that COVID-19 infiltrated FCI Phoenix does not negate such conclusions. The statistical information for FCI Phoenix demonstrates a widespread COVID-19 outbreak, but it was not disastrous. There was one inmate death as a result, and 479 inmates including Hodgin have recovered. This persuades the court that FCI Phoenix has acted appropriately to treat inmates who do contract COVID-19, and will continue to do so in the future.

  Recently, the Bureau of Prisons has implemented a COVID-19 vaccination plan and has begun administering vaccines to inmates and staff. *See BOP: COVID-19 Update*, https://www.bop.gov/coronavirus/ (last visited Mar. 9, 2021). As of March 9, 2021, 71,919 doses have been administered systemwide. *Id.* These numbers are increasing daily. At FCI Phoenix, 130 staff and 196 inmates have been fully vaccinated as of March 9, 2021. *Learn More*

10

*About Vaccinations and View Individual Facility Stats*,

https://www.bop.gov/coronavirus/ (last visited Mar. 9, 2021). According to the BOP, those inmates who wish to receive the vaccine will have an opportunity to do so, but

> [w]hen an institution receives an allocation of the vaccine, it is first offered to full-time staff at that location, given that staff - who come and go between the facility and the community - present a higher potential vector for COVID-19 transmission. Vaccinating staff protects fellow staff, inmates at the facility, and the community.

*Id.*

It is understandable that Hodgin is concerned about her health in the age of COVID-19, and the court does not minimize those concerns. The court, nevertheless, concludes Hodgin's medical conditions coupled with her history of COVID-19 and the present conditions at FCI Phoenix do not clear the high bar necessary to warrant compassionate release for "extraordinary and compelling reasons." Furthermore, the court has denied compassionate release motions under circumstances similar to hers. *See United States v. Brunston*, 4:18-CR-40145-KES, Docket 68 (D.S.D. May 26, 2020) (denying compassionate release after defendant had confirmed case of COVID-19) *United States v. Odie*, 4:17-CR-40016-01-KES, Docket 214 (D.S.D. Jan. 26, 2021) (denying reconsideration of compassionate release for defendant with confirmed case of mild COVID-19); *United States v. Muhs,* 4:19-CR-40023-02-KES, Docket 362 (D.S.D. Feb. 12, 2021) (denying compassionate release for defendant with resolved case of COVID-19).

### B. Family Circumstances Category, Note 1(C)

To justify compassionate release under the family circumstances category, USSG § 1B1.13 comment note 1(C), the defendant must demonstrate one of the following: (1) the death or incapacitation of the caregiver of the defendant's minor children or (2) the incapacitation of the defendant's spouse when the defendant would be the only available caregiver for the spouse. Hodgin's claim that her mother is in poor health and requires a caregiver is substantiated in the record. *See* Docket 121 at 4-9. It is admirable that Hodgin desires to assist her mother in her failing health, but the family circumstances category specifically references care needed for a spouse or minor children. *See* USSG § 1B1.13, cmt. n.1(C). Though the court is not unsympathetic, these circumstances do not justify release under the applicable comment notes.

### C. Catch-all Category, Note 1(D)

The catch-all category in Note 1(D) does not result in a different outcome. The catch-all category allows for release if there are extraordinary and compelling reasons other than, or in combination with, those identified in 1(A) through 1(C). USSG § 1B1.13, cmt. n.1(D). Even after considering the ongoing COVID-19 pandemic combined with Hodgin's medical conditions and history of COVID-19, the court is not convinced that "extraordinary and compelling reasons" exist to release Hodgin early from custody.

## III. Sentencing Factors of § 3553(a)

Even if the court were to consider Hodgin's situation as "extraordinary and compelling," the sentencing factors weigh against granting her motion for

12

compassionate release.

Hodgin's conviction stems from a conspiracy to distribute narcotics. Law enforcement received a report that Hodgins and her co-conspirator were involved in distributing pound quantities of methamphetamine in the Sioux Falls area. Docket 107 ¶ 10. Beginning in late July 2015, law enforcement arranged multiple controlled buys of methamphetamine from Hodgins. *Id.* ¶¶ 12-15, 17. One of the controlled buys involved 88.1 grams of methamphetamine. *Id.* ¶ 15. During another, Hodgins sold the informant 115 grams of methamphetamine and stated she had 46 methamphetamine customers. *Id.* ¶ 18. On September 16, 2015, a search warrant was executed at the home of Hodgin and her co-conspirator. *Id.* ¶ 23. During the search, law enforcement located seven firearms, multiple types of ammunition, United States currency, scales, methamphetamine, and drug paraphernalia, among other items. *Id.*

A presentence investigation report (PSR) indicated that at least 7.48 kilograms of methamphetamine were attributable to Hodgin. Docket 107 ¶ 31. The total offense level for Hodgin's conduct was calculated at 33, and she fell into criminal history category I. *Id.* ¶¶ 45, 49. The resulting advisory guideline range for her sentence was 135 to 168 months in custody. *Id.* ¶ 77. The court sentenced Hodgin below the guideline range to 130 months in custody. Docket 112 at 2.

Hodgin has served approximately 48% of her statutory term. Docket 119 at 610. Under her current status in the BOP, she is eligible for home detention

on May 25, 2025. *Id.* at 609. The court's sentencing decision was made with care, considering the nature of Hodgin's offense, her history and characteristics, and all the other applicable sentencing factors. After careful consideration of her motion, the court concludes Hodgin's sentence of 130 months in custody with five years of supervised release continues to be appropriate for the seriousness of the offense to which she pleaded guilty.

## CONCLUSION

Hodgin has failed to satisfy the extraordinary and compelling reason standard. Thus, it is

ORDERED that defendant's motion for relief under the First Step Act (Docket 117) is denied.

Dated March 11, 2021.

BY THE COURT:

*/s/ Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE